IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMY P.,[1] | ) | |
| | ) | |
| Plaintiff, | ) | No. 21 C 3557 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff applied for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423, over seven years ago in October of 2016. (Administrative Record (R.) 203-204). She claimed that she had been disabled since March 1, 2015 (R. 203, 231) due to "Myofascial Pain Syndrome, Possible Fibromyalgia, Aortic Valve Stenosis, Bilateral Osteoarthritis –Hands, Bilateral Carpal Tunnel Syndrome – Hands, Osteoarthritis and Narrowing Btwn Vertebraes C5, C6, C7, Major Depressive Disorder, Anxiety Disorder, Heart Murmur, Hypertension." (R. 234). Over the next four years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the most recent ALJ's decision that is before the court for review. *See* 20 C.F.R. §§ 404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g) on July 2, 2021, and the case was fully briefed as of July 7, 2022. [Dkt. ##13, 20, 21, 24]. After more than a year and a half, the parties consented to the jurisdiction of a

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

magistrate judge pursuant to 28 U.S.C. § 636(c) on January 3, 2024. [Dkt. #30]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

I.

After an administrative hearing at which plaintiff, represented by counsel, testified, along with a vocational expert, the ALJ determined the plaintiff had the following severe impairments: bilateral carpal tunnel syndrome, fibromyalgia, myofascial pain disorder, degenerative changes in the bilateral hands/fingers and obesity. (R. 23). The ALJ said that the plaintiff's other impairments – aortic valve stenosis, attention deficit hyperactivity disorder, mood disorder, and anxiety – caused no more than minimal limitations, and were not severe. (R. 23). With regard to plaintiff's depression and anxiety, the ALJ found that the plaintiff had no more than mild limitations in understanding, remembering, or applying information; understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. (R. 23-24). The ALJ then found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24-25).

The ALJ then determined that the plaintiff had the residual functional capacity ("RFC") to capacity to perform light work "except as follows: the claimant was able to frequently climb, balance, stoop, kneel, crouch or crawl. The claimant was limited to occasional handling and fingering bilaterally." (R. 25). The ALJ then went over the plaintiff's allegations. The ALJ noted that the plaintiff said she was unable to lift significant weight and had difficulty using her hands, particularly for grasping and fingering. The plaintiff also said she was unable to stand or walk for

2

prolonged standing or walking, and was limited to standing 30 minutes at a time before she needed a break. The plaintiff estimated that she lies down approximately 4 hours during an average day. She was also limited in squatting, bending, kneeling, stair climbing, memory, completing tasks and concentration. (R. 26). The ALJ then found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. 26).

The ALJ then reviewed the medical evidence, noting that the period at issue ran from the plaintiff's alleged onset date of September 19, 2017, through the plaintiff's date last insured, December 31, 2017. (R. 26). As the ALJ related, examinations during this period showed obesity and complaints of pain in the lower back, with diagnoses including myofascial pain syndrome and fibromyalgia. Doctor recommended medication and physical therapy. (R. 26). In April 2018, treating physicians again diagnosed myofascial pain syndrome and prescribed medication. In May 2019, plaintiff had a consultative exam with Dr. C. Fernando. Examination revealed obesity, discomfort with range of motion in the neck, diffuse tenderness to palpation in the midline and paraspinal areas, discomfort with range of motion in the back, minimal osteoarthritis changes in the PIP and DIP joints in the bilateral hands and some balance issues. Diagnoses were chronic pain (with possible fibromyalgia), bilateral carpal tunnel syndrome, osteoarthritis in the PIP and DIP joints and psoriasis. Additional records reflected sporadic office visits for follow-up and medication management. Clinical findings included 18/20 tender points and continued obesity. (R. 26-27).

The ALJ went on to note that there were minimal abnormal objective findings during the period at issue. Aside from obesity and complaints of pain, an October 2017 physical examination revealed normal results, including a normal musculoskeletal examination. Dr. Fernando reported intact range of motion in the neck, back, shoulders, elbows, wrists, hips, knees and ankles, good muscle tone with good active motion in all extremities, 5/5 muscle strength in all extremities, intact sensation, intact reflexes, negative Romberg testing and normal gait. Reports also showed the claimant's pain/fibromyalgia was stable with medication. (R. 27). Treatment for myofascial pain syndrome/fibromyalgia was minimal and conservative from the alleged onset date through the date last insured, and there was no treatment for carpal tunnel syndrome or bilateral hand pain. (R. 27)

The ALJ then considered the medical opinion evidence. She noted that, in January 2017, State agency medical consultant, Dr. Rule said that the plaintiff was capable of light work, but was limited to frequent balancing, stooping, kneeling, crouching and crawling, and frequent handling and fingering bilaterally. In June 2017, State agency medical consultant, Dr. Chan affirmed that assessment. In May 2019, examining physician, Dr. Fernando opined the plaintiff was capable of light work, but was limited to frequent kneeling, occasional bending, stooping and crouching, and occasional grasping. (R. 27). The doctor also felt she should avoid repetitive had movement and overhead movement, climbing ladders, working at heights or operating heavy machinery. The ALJ gave all these opinions great weight, as they were supported by objective evidence, such as evidence of intact range of motion in the neck, back, shoulders, elbows, wrists, hips, knees and ankles, good muscle tone with good active motion in all extremities, 5/5 muscle strength in all extremities, intact sensation, intact reflexes, negative Romberg testing and normal gait. The ALJ also felt the opinions were consistent with treatment reports, treatment history and daily activities. The ALJ gave more

4

weight to the State agency consultant's nonexertional limitations than Dr. Fernando's nonexertional limitations because Dr. Feranando's opinion was based on an examination in May 2019, over a year and a half after plaintiff's insured status expired in December 2017. (R. 28). The ALJ also said that the report from the plaintiff's husband that she was limited in lifting, walking, stair climbing, memory, completing tasks and using hands, was s inconsistent with objective evidence, such as evidence of normal musculoskeletal examination (including normal lumbar back examination) during the period at issue, and inconsistent with treatment reports, treatment history and daily activities. (R. 27).

The ALJ then concluded that the plaintiff was unable to perform her past relevant work. But, relying on the testimony of the vocational expert, the ALJ found that the plaintiff could still perform other jobs that existed in significant numbers in the national economy, such as rental clerk (DOT: 295.357-018; 40,000 jobs), counter clerk (DOT: 249.366-010; 44,700 jobs), and usher (DOT: 344.677-014; 25,000). Accordingly, the ALJ concluded that plaintiff was not disabled and not entitled to benefits under the Act.

## II.

The court's review of the ALJ's decision is "extremely limited." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022). If the ALJ's decision is supported by "substantial evidence," the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). The "substantial evidence" standard is not a high hurdle to negotiate. *Biestek v. Berryhill*, – U.S. –, –, 139 S. Ct. 1148, 1154 (2019); *Baptist v. Kijakazi*, 74 F.4th 437, 441 (7th Cir. 2023); *Bakke v. Kijakazi*, 62 F.4th 1061, 1066 (7th Cir. 2023). Indeed, it may be less than a preponderance of the evidence, *Schmidt v. Astrue*, 496 F.3d 833,

5

842 (7th Cir. 2007); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir.2007), and is only that much "evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *see also Baptist*, 74 F.43d at 441. To determine whether "substantial evidence" exists, the court reviews the record as a whole, but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving debatable evidentiary conflicts, or determining credibility. *Crowell v. Kijakazi*, 72 F.4th 810, 814 (7th Cir. 2023); *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022); *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Where reasonable minds could differ on the weight of evidence, the court defers to the ALJ. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021); *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020); *see also Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)(". . . the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."); *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)("The substantial-evidence standard ... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts.").

But, in the Seventh Circuit, the ALJ also has an obligation to build what is called an "accurate and logical bridge" between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). The Seventh Circuit has explained that, even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that "logical bridge." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.

1996)("... we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Jarnutowski*, 48 F.4th at 774 ("... the Commissioner argues, we should affirm the ALJ's decision because it was supported by the evidence. Possibly. But we cannot reach that conclusion from the ALJ's analysis."); *but see, e.g., Riley v. City of Kokomo*, 909 F.3d 182, 188 (7th Cir. 2018)("But we need not address either of those issues here because, even if [plaintiff] were correct on both counts, we may affirm on any basis appearing in the record,...."); *Steimel v. Wernert*, 823 F.3d 902, 917 (7th Cir. 2016)("We have serious reservations about this decision, which strikes us as too sweeping. Nonetheless, we may affirm on any basis that fairly appears in the record."); *Kidwell v. Eisenhauer*, 679 F.3d 957, 965 (7th Cir. 2012)("[District court] did not properly allocate the burden of proof on the causation element between the parties,...No matter, because we may affirm on any basis that appears in the record.").

Of course, this is a subjective standard, and a lack of predictability comes with it for ALJs hoping to write opinions that stand up to judicial review. One reviewer might see an expanse of deep water that can only be traversed by an engineering marvel like the Mackinac Bridge. Another might see a trickle of a creek they can hop across with barely a splash. But, the Seventh Circuit has also called this requirement "lax." *Crowell*, 72 F.4th at 816; *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008); *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). All ALJs really need to do is "minimally articulate" their reasoning. *Grotts v. Kijakazi*, 27 F.4th 1273, 1276 (7th Cir. 2022); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016). "If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has

7

done enough." *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985).[2]  The ALJ did enough here.

### III.

The plaintiff has a number of problems with the ALJ's Opinion, which she breaks down into three topics, with each topic including any number of criticisms. First, she argues that she was denied due process because the ALJ got her alleged onset date wrong. [Dkt. #13, at 6]. Second, she

---

[2] Prior to Sarchet's "logical bridge" language, the court generally employed the phrase "minimal articulation" in describing an ALJ's responsibility to address evidence. *Zalewski v. Heckler*, 760 F.2d 160, 166 (7th Cir. 1985)(collecting cases). The court's focus was on whether an ALJ's opinion assured the reviewing court that he or she had considered all significant evidence of disability. In *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir. 1984), for example, the court "emphasize[d] that [it] d[id] not require a written evaluation of every piece of testimony and evidence submitted" but only "a minimal level of articulation of the ALJ's assessment of the evidence...in cases in which considerable evidence is presented to counter the agency's position." *Zblewski*, 732 F.2d at 79. In *Stephens v. Heckler*, 766 F.2d 284, 287-88 (7th Cir. 1985), the court rejected a plaintiff's argument that an ALJ failed to adequately discuss his complaints of pain and was more explicit about how far ALJs had to go to explain their conclusions:

> We do not have the fetish about findings that [the plaintff] attributes to us. The court review judgments, not opinions. The statute requires us to review the quality of the evidence, which must be "substantial," not the quality of the ALJ's literary skills. The ALJs work under great burdens. Their supervisors urge them to work quickly. When they slow down to write better opinions, that holds up the queue and prevents deserving people from receiving benefits. When they process cases quickly, they necessarily take less time on opinions. When a court remands a case with an order to write a better opinion, it clogs the queue in two ways—first because the new hearing on remand takes time, second because it sends the signal that ALJs should write more in each case (and thus hear fewer cases).
> The ALJ's opinion is important not in its own right but because it tells us whether the ALJ has considered all the evidence, as the statute requires him to do....This court insists that the finder of fact explain why he rejects uncontradicted evidence. One inference from a silent opinion is that the ALJ did not reject the evidence but simply forgot it or thought it irrelevant. That is the reason the ALJ must mention and discuss, however briefly, uncontradicted evidence that supports the claim for benefits.

*Stephens*, 766 F.2d at 287 (citations omitted).

Much more recently, the Seventh Circuit explained that "the 'logical bridge' language in our caselaw is descriptive but does not alter the applicable substantial-evidence standard." *Brumbaugh v. Saul*, 850 F. App'x 973, 977 (7th Cir. 2021).

contends that the ALJ erred in determining her residual functional capacity. [Dkt. #13, at 7-11]. And, third, the plaintiff argues that the ALJ failed to properly evaluate her subjective allegations. [Dkt. #13, at 11-14]. The plaintiff even made a fourth argument, contending that the Social Security Administration's structure is unconstitutional [Dkt. #13, at 14-15], but she withdrew it in her Reply brief. [Dkt. #24, at 14 n.2].[3]

**A.**

As noted, the plaintiff begins by arguing that the ALJ got her alleged onset date wrong. [Dkt. #13, at 6]. That's true, as far as it goes, but it was plaintiff's attorneys – she has had at least two through this process – who have made a bit of a hash of her alleged onset date. Plaintiff started out by claiming she became disabled as of March 1, 2015. (R. 203). Her then-counsel filed to change that date to May 30, 2017, on September 19, 2019. (R. 230). The ALJ apparently confused the date of the letter for the amended onset date and said the new date was September 19, 2017. (R. 20). Plaintiff's then-counsel did not seem to think much of it and thus made no mention of the error in his two briefs to the Appeals Council. (R. 312-316).

Plaintiff's current counsel, however, felt it was an issue. In plaintiff's opening brief, counsel claimed that plaintiff had amended her onset date to March 30, 2017, citing previous counsel's September 19, 2019 filing. [Dkt. #13, at (citing R. 230)]. That, of course, was another error, as that filing asked for a *May* 30, 2017 onset date, not *March*. (R. 230). Defendant pointed out plaintiff's mistake in defendant's response brief. [Dkt. #21, at 16]. Plaintiff's Reply brief brushed it off, simply arguing that the ALJ had still ignored three and a half month's worth of evidence. [Dkt. #24,

---

[3] The constitutional argument was a bit curious as the plaintiff asked that the court remand this case back to the very agency she contended had an unconstitutional structure. [Dkt. #13, at 15].

9

at 1 n.1]. And, the plaintiff added that the ALJ's error was a legal error, so the concept of "harmless error" was inapplicable. [Dkt. #24, at 1]. But, harmless error does, in fact, apply in a legal error context. *See, e.g., Karr*, 989 F.3d at 513 ("Normally a failure to apply the correct legal standard requires us to remand the case to the ALJ for further proceedings . . . But if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."); *see also Samson v. United States Dep't of Lab., Admin. Rev. Bd.*, 732 F. App'x 444, 446 (7th Cir. 2018)(" . . . the ALJ's error of law about the report does not require a remand if the error is harmless."); *Allen v. Kijakazi*, No. 22-35411, 2023 WL 3918241, at *1 (9th Cir. June 9, 2023)("Even when the ALJ commits legal error, we uphold the decision where that error is harmless, . . . ."). We'll return to the "harmless error" analysis after a discussion of the medical evidence in connection with the plaintiff's other arguments.

**B.**

The plaintiff next complains that the ALJ failed to include all of her physical limitations, specifically her "hand dexterity limitation and her need to lie down or elevate her legs for 4 hours every day." [Dkt. #13, at 7]. The ALJ clearly considered the plaintiff's complaints about her hands and her testimony that she spent about four hours a day lying down. (R. 26). She limited the plaintiff to occasional handling and fingering bilaterally (R. 25), so the plaintiff is incorrect about the ALJ not including any limitations regarding her dexterity in the residual functional capacity finding. As for the plaintiff's alleged need to lie down four hours a day, ALJs only need only account for those limitations supported by the medical evidence. *Vang v. Saul*, 805 F. App'x 398, 402 (7th Cir. 2020); *Jozefyk v. Berryhill*, 923 F.3d 492, 497–98 (7th Cir. 2019); *Simila v. Astrue*, 573 F.3d 503, 521 (7th Cir. 2009). In discussing the medical evidence, the ALJ noted any number of

10

normal or mild findings (R. 27-28) that arguably do not support a need to lie down for four hours a day.

The plaintiff next claims that the ALJ overlooked "ongoing objective medical evidence" that shows degenerative changes in her neck and spine, bone spurs in her feet, asthma (AR 324, 326, 331, 336, 378, 437, 456, 494), and the impact of obesity (AR 324, 331, 456, 494). To the extent the evidence the plaintiff cites (R. 324, 326, 331, 336, 378, 437, 456, 494) is "objective," it is hardly "ongoing" and dates back to 2014 and 2016, between one year and three years before the plaintiff's alleged onset of disability. While there was imaging of her cervical spine in May of 2016 showing osteophytes at C5-C6 with disc space narrowing, (R. 355), but there was imaging showing normal cervical spine flexion and left rotation with no pain; 75% extension and 75% right rotation with pain (R. 355) treatment was stretching and manipulation. (R. 356). And two weeks earlier, plaintiff exhibited a normal range of motion in her neck, (R. 362), and as the ALJ discussed in her Opinion, plaintiff continued to have intact range of motion, including in her neck and shoulders, in more recent examinations. (R. 26-27).

Bone spurs in plaintiff's feet were mentioned at an exam years before her alleged onset date, but her doctor noted she had been wearing flip flops and recommended she wear tennis shoes with arch support. (R. 374, 376). One has to wonder how a doctor telling the plaintiff to wear shoes instead of sandals in 2014 – three years before the purported onset of disability in 2017 – warrants a remand? Plaintiff does not say, and the court cannot begin to guess. *See, e.g. Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019)("It is unclear what kinds of work restrictions might address [plaintiff's impairment] because [s]he hypothesizes none.").

As for asthma, in March 10, 2014, plaintiff complained of wheezing due to second hand smoke, but a pulmonary exam was normal. (R. 378). In August and September of 2016, it was noted that plaintiff had been prescribed an inhaler for shortness of breath as needed (R. 326, 336), but there was no mention of any limitations or restrictions. Plaintiff offers nothing but speculation there she may have had "limitations common to people with asthma, including limiting exposure to heat, cold, or humidity, fumes, odors, dusts, gases, poor ventilation, and other pulmonary irritants." [Dkt. #13, at 9]. But that is merely speculation. It was up to the plaintiff to point to a medical opinion or medical evidence to show her asthma caused any specific limitations. *Gedatus*, 994 F.3d at 905.

The same can be said of obesity: while it was mentioned in an examination note dating back three to five years before the plaintiff's alleged onset date, there was no discussion of any restrictions or limitations. (R. 324, 331, 456, 494). In any event, the ALJ specifically considered the plaintiff's obesity as a contributing factor to limitations stemming from the plaintiff's other impairments. (R. 26, 27). And, she relied on the opinions from the state agency reviewing physicians who *also* considered the effects of plaintiff's obesity. (R. 76, 88, 92-93). That is sufficient. *See, e.g., Bakke*, 62 F.4th at 1070 ("... the ALJ viewed [plaintiff's] obesity as a cause of worsening symptoms, to be considered throughout the evaluation. And the ALJ relied on expert medical opinions, each of which incorporated [plaintiff's] obesity in its consideration of his symptoms, further guaranteeing that [plaintiff's] obesity was not ignored."). Moreover, the plaintiff does not point to any medical evidence that she suffers from limitations based on her obesity. *See, e.g., Brown v. Colvin*, 845 F.3d 247, 252–53 (7th Cir. 2016); *Stepp v. Colvin*, 795 F.3d 711, 720 (7th Cir. 2015).

Next, the plaintiff takes the ALJ to task for saying she had an "active lifestyle." [Dkt. #13, at 9]. As the ALJ recounted (R. 26), the plaintiff said she took her children to and from school every

12

day, as well as to sports and parties. She did necessary errands. She did the laundry, took care of her husband, children, and family pets. (R. 266). She prepared simple meals. (R. 267). She left the house daily, whether walking, driving, or riding in a car. She shopped for groceries, household items, and clothes. (R. 268). She socialized with others at occasional dinners out or get-togethers. She went to restaurants and the community pool. (R. 269). The ALJ was required to take note of these activities. 20 C.F.R. § 404.1529(c)(3)(I). And, contrary to the plaintiff's mischaracterization of the ALJ's decision, she was clearly and properly did not equate plaintiff's daily activities with full-time work. *See, e.g., Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *3 (7th Cir. Oct. 11, 2022); *Deborah M. v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021). Instead, the ALJ merely said that plaintiff's activities were inconsistent with someone who alleges such a degree of chronic pain that she must lie down for hours a day. (R. 27). It is difficult to see what is erroneous about that.

## C.

From there, the plaintiff complains about the ALJ's evaluation of her allegations regarding her symptoms and limitations. The ALJ summarized the plaintiff's allegations and found that they did not jibe with the objective medical evidence and conservative course of treatment. (R. 26, 27). Those are entirely valid bases for rejecting the extent of a plaintiff's allegations. *Martin v. Kijakazi*, 88 F.4th 726, 730 (7th Cir. 2023); *Tutwiler v. Kijakazi*, 87 F.4th 853, 859 (7th Cir. 2023); *Grotts*, 27 F.4th at 1278. As the ALJ recounted, there was a dearth of medical evidence here for the pertinent period. Findings such as strength and range of motion were, in the main, normal or only mildly abnormal. Plaintiff's treatment was, indeed, conservative, consisting of medication and physical therapy. *See, e.g., Baptist*, 74 F.4th at 445; *Simila v. Astrue*, 573 F.3d 503, 519 (7th Cir. 2009) (ALJ properly relied on claimant's conservative treatment history to discount her complaints).

Given the record, the ALJ's assessment cannot be said to be "patently wrong" and, as such, must be allowed to stand. As the court recently stressed in *Hess v. O'Malley*, – F.4th. –, – , 2024 WL 470523, at *6 (7th Cir. Feb. 7, 2024): "We will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is patently wrong, which means that the decision lacks any explanation or support." *See also Tutwiler*, 87 F.4th at 859; *Hohman v. Kijakazi*, 72 F.4th 248, 251 (7th Cir. 2023).

Much the same can be said of the ALJ's consideration of the plaintiff's husband's third-party statement. The ALJ gave it little weight because it, too, was inconsistent with the objective medical evidence, the plaintiff's course of treatment, and the plaintiff's activities. (R. 28). And, again, at least arguably, it was. The plaintiff, of course, disagrees, and perhaps even another reviewing court might disagree, but that's where the "substantial evidence" standard comes in. *Tutwiler*, 87 F.4th at 859; *Combs v. Kijakazi*, 69 F.4th 428, 434 (7th Cir. 2023); *Bakke*, 62 F.4th at 1068.

### D.

Now, back to the moving target plaintiff presented as an onset date. We don't know why the plaintiff adjusted by over two years the date she claimed she became disabled from March 1, 2015 to May 30, 2017. We do know that she did not stop working due to any disability. She stopped working in July 2012, long before she claims she became disabled, when her husband took a job in Southern California. (R. 235). And, we also know that the change of onset date left her with a rather small window in which to establish she was disabled. Plaintiff's insured status expired on December 31, 2017 (R. 23, 65, 78), and she had to prove she was disabled before that. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022); *Parker v. Astrue*, 597 F.3d 920, 924 (7th Cir. 2010). To do that, she had to provide more than allegations and complaints about pain. She had to carry her burden of proof with medical evidence. *See Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010)

("But subjective complaints are the opposite of objective medical evidence...."); *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008)("The claimant bears the burden of producing medical evidence that supports her claims of disability. That means that the claimant bears the risk of uncertainty, ...."); *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability."); 20 C.F.R. § 404.1512(c)("You must provide medical evidence showing that you have an impairment and how severe it is during the time you say that you were disabled.").

But, as promised, we shall circle back and examine what the plaintiff seems to characterize as three months of game-changing evidence. Unhelpfully, she cites a block of one hundred pages of medical records for 2017. *See Ehrhart v. Sec'y of Health & Hum. Servs.*, 969 F.2d 534, 537 n.5 (7th Cir. 1992)("Once again we observe that compelling the court to take up a burdensome and fruitless scavenger hunt for arguments is a drain on its time and resources."); *Ivana D. v. Kijakazi*, No. 21 C 605, 2023 WL 3918988, at *4 n.6 (N.D. Ill. June 9, 2023)("Rather than direct the Court to specific medical records, Plaintiff cites to entire exhibits covering hundreds of pages. It is not the Court's responsibility to comb through the record to find documents that support Plaintiff's case."); *Jennifer F. v. Kijakazi*, No. 20 C 5365, 2022 WL 3043078, at *5 (N.D. Ill. Aug. 2, 2022)("The plaintiff doesn't specifically go beyond those three unremarkable medical notes to identify any instances where [her doctor] made medical findings that support his dire assessment of plaintiff's capabilities. Instead, she directs the court to forty pages of [the doctor's] notes at R. 618-59. That's not terribly helpful and, of course, it is not the court's task to sift through the record to identify evidence to support plaintiff's positions."); *Vincent A. v. Berryhill*, No. 16 C 7136, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019) ("Plaintiff apparently expects the Court to review these

15

pages and identify for itself the supported allegations and determine their significance. The Court declines to do so."). The plaintiff makes no claim that this evidence shows she is disabled or that it runs counter to the ALJ's decision. Instead, she says it shows that "she saw or communicated with at least four doctors for a total of at least nine times about various medical conditions." [Dkt. #24, at 1]. As Judge Easterbrook said in another context: "So What?...Who cares?...True, but irrelevant." *Israel Travel Advis. Serv. v. Israel Iden. Tours*, 61 F.3d 1250, 1259 (7th Cir. 1995). Again, it's the plaintiff's burden to provide medical evidence to prove she is disabled, not to prove that she saw or talked to doctors.

But, for the sake of thoroughness, we will examine the evidence the ALJ missed due to the plaintiff's mercurial alleged onset date:

> January 20, 2017 – Plaintiff called in for phone appointment, reported she was doing better on Gabapentin with less pain, sleeping better with less fatigue. Dosage was changed to every three hours from four. (R. 1060).
>
> March 28, 2017 – Depression and anxiety follow-up. Plaintiff said she was not feeling depressed but was frustrated with son over him not getting college applications completed. Gabapentin helpful. (R. 1067). Learning to cope with fibromyalgia, sleeping better. (R. 1068). Doctor advised her to keep stretching regularly and start water aerobics. (R. 1073). Mood: good; Affect: appropriate; Thought Content: normal; Attention: intact; Concentration: distractible; Memory Recent and Remote: grossly intact; Insight: fair to good; Judgment: unimpaired. Symptoms were noted to be in remission on medication. (R. 1081).
>
> June 6, 2017 – Plaintiff's cholesterol test revealed cholesterol to be mildly elevated. (R. 1109).
>
> June 8, 2017 – Plaintiff emailed her provider to ask about an acupuncture referral. She said Gabapentin was working for her fibromyalgia but not if she missed a dose. (R. 1118). She was provided with information for a self-referral. (R. 1121, 1131).
>
> June 22, 2017 – Plaintiff again asked about an acupuncture referral and massage therapy, saying it had helped her husband with his chronic pain. (R. 1136).

>July 7, 2017 – Plaintiff cancelled her appointment as she was going out of town. (R. 1146).
>
>July 17, 2017 – Plaintiff said she was stressed over having to move to Northern California and taking her son out of school. Struggling with chronic pain. (R. 1156). Smoking marijuana nightly for pain. (R. 1157). Mood: stressed; Affect: reactive, briefly tearful but smiling rest of the time; Thought Content: normal; Attention: intact; Concentration: distractible; Memory Recent and Remote: grossly intact; Insight: fair to good; Judgment: unimpaired. (R. 1160).
>
>August 21, 2017 – Plaintiff reported she was doing a lot better, much less sad, not dwelling on move to northern California. (R. 1197). Mood: better; Affect: reactive, briefly tearful but smiling rest of the time; Thought Content: normal; Insight: fair to good; Judgment: unimpaired. (R. 1201).
>
>October 26, 2017 – Plaintiff reported low back pain with prolonged sitting. Cardiovascular exam normal; Musculoskeletal exam: no edema; Lumbar: normal range of motion, no tenderness, no swelling, no edema (R. 1230).
>
>November 17, 2017 – Plaintiff called to report depression and stress with husband laid off and moving in December. Plaintiff also said she was PTA vice president and at school everyday with 400 children, parents and 20 teachers. (R. 1322).

Simply put, there is nothing there that shows the plaintiff was disabled. While there were occasions when she reported she was stressed and depressed due to changes in her life during that time, but even then, her thought content, memory, insight and judgment were normal. And, although she complained of pain, there is no medical exam in those hundred pages that depicts any loss of functioning. Range of motion was normal, and she exhibited no tenderness. And, recall the plaintiff took offense with the ALJ calling her lifestyle "active." Surely plaintiff's daily involvement with the PTA tends to support the ALJ's characterization.

No one, including the ALJ, is saying the plaintiff does not experience pain; but being unable to work without pain does not alone entitle someone to disability benefits. *See, e.g., Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010)(affirming ALJ's decision noting that "[d]isability requires

17

more than mere inability to work without pain."); *Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989)("Even if [plaintiff] did experience some discomfort, this alone does not establish disability."); *Brown v. Bowen*, 801 F.2d 361, 362 (10th Cir. 1986) (". . . disability requires more than mere inability to work without pain"). People working without pain or discomfort, especially after age 50, are few and far between, even in sedentary jobs. If pain while working was all it took to qualify for disability benefits, "eligibility for disability benefits would take on new meaning." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2nd Cir. 1983).

      The harmless error standard says that the court will not remand a case to the ALJ for further consideration where the court is convinced that the ALJ will reach the same result. *Wilder v. Kijakazi*, 22 F.4th 644, 654 (7th Cir. 2022); *Karr*, 989 F.3d at 513 (". . . if the error leaves us convinced that the ALJ would reach the same result on remand, then the error is harmless and a remand is not required."); *McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) (holding that the ALJ's oversight in failing to consider a state agency physician's opinion was harmless error because we can say with great confidence that the ALJ would reach the same result on remand); *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010) ("If it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support, then remanding is a waste of time"). Based on the evidence above, not to mention the plaintiff's own characterization of that evidence, a remand here would be a waste of time.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment [Dkt. # 20] is granted, and the ALJ's decision is affirmed.

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/8/24